# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**KENNETH LAVIGNE (#106038)**                    **CIVIL ACTION**

**VERSUS**                                         **NO. 19-894-SDD-RLB**

**W.S. McCAIN, et al.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT**

Signed in Baton Rouge, Louisiana, on July 25, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**KENNETH LAVIGNE (#106038)**                              **CIVIL ACTION**

**VERSUS**                                                              **NO. 19-894-SDD-RLB**

**W.S. McCAIN, et al.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

    This matter comes before the Court on a Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254 by Kenneth Lavigne ("Petitioner"). The State has filed an opposition to Petitioner's application.[1] Following the appointment of counsel to represent Petitioner, both Petitioner and Respondents filed supplemental memoranda in support of their respective Petition and Answer.[2] There is no need for oral argument or for an evidentiary hearing.

    On December 31, 2019, Petitioner, an inmate confined at the Raymond Laborde Correctional Center, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, attacking his 2016 guilty plea and sentence for one count of manslaughter and one count of second degree kidnapping in the Twenty-Third Judicial District Court for the Parish of Ascension, State of Louisiana ("23rd JDC").[3] Petitioner asserts three claims of ineffective assistance of trial counsel and two claims of ineffective assistance of appellate counsel.[4] The Court, however, finds

---

[1] R. Docs. 6, 7.

[2] R. Docs. 12, 18, 19.

[3] R. Doc. 1, p. 1.

[4] *Id.*, pp. 3-7. The specific claims brought by Petitioner are: (1) ineffective assistance of trial counsel that failed to inform petitioner that the second degree kidnapping charge to which he would plead guilty was time-barred by statute of limitations; (2) ineffective assistance of trial counsel that failed to withdraw guilty plea on statute of limitation grounds; (3) ineffective assistance of trial counsel that failed to object to omissions in the pre-sentence investigation report; (4) ineffective assistance of appellate counsel that failed to argue the issue of second degree kidnapping charge being barred by statute of limitations; and (5) ineffective assistance of appellate counsel that failed to argue the issue that the guilty plea to second degree kidnapping was not voluntary, knowing, or intelligent.

Petitioner has not demonstrated ineffectiveness of either trial or appellate counsel and hereby recommends dismissal of Petitioner's claims, as set forth below.

## I.    Procedural History

On January 8, 2016, a bill of information issued, charging Petitioner with one count of manslaughter and one count of second degree kidnapping.[5] Petitioner entered a plea of guilty to both charges that same day.[6] Petitioner was then sentenced to 21 years at hard labor for the count of manslaughter.[7] The court deferred sentencing on the count of second degree kidnapping and ordered a Pre-Sentence Investigation ("PSI") report.[8] The documentation executed by the Petitioner specifically stated that the court would determine "whether the sentences run concurrently or consecutively.[9] On April 18, 2016, the day of sentencing on the second degree kidnapping charge, Petitioner, after learning that his PSI report was unfavorable, filed a motion seeking to withdraw his guilty plea to the second degree kidnapping charge, arguing that his plea was not knowingly and intelligently made because he would never have pleaded guilty if he thought the two sentences would run consecutively, as opposed to concurrently.[10] Petitioner's motion was denied, and Petitioner was sentenced to 40 years at hard labor, without the benefit of parole, probation, or suspension of sentence, for the charge of second degree kidnapping, to be served consecutively with the previously-imposed sentence of 21 years for manslaughter.[11]

On May 16, 2016, Petitioner filed a Motion to Reconsider Sentence, which Motion was denied on May 18, 2016.[12] Petitioner sought a direct appeal with the First Circuit Court of

---

[5] R. Doc. 8, p. 37.
[6] R. Doc. 4, pp. 46-50; R. Doc. 8, pp. 42-43.
[7] R. Doc. 8, pp. 42-43.
[8] *Id.*
[9] R. Doc. 4, p. 49.
[10] R. Doc. 4, pp. 190-192.
[11] R. Doc. 4-2, pp. 1-3.
[12] R. Doc. 4, pp. 60-62.

Appeal ("First Circuit"), which affirmed his conviction and sentence on October 28, 2016.[13] The Louisiana Supreme Court subsequently denied writs of supervisory review on September 15, 2017.[14]

 While Petitioner was proceeding on direct appeal, on January 9, 2017, he filed a Motion to Quash in the trial court, moving for dismissal of the bill of information for the second degree kidnapping charge based on the State's failure to institute prosecution of said charge within the time limitation set forth in La. C.Cr.P. art. 572(1).[15] The 23rd JDC denied Petitioner's Motion to Quash on January 12, 2017.[16] Petitioner's application for supervisory writs of review was denied on May 1, 2017.[17] The Louisiana Supreme Court similarly denied Petitioner's application for supervisory writs on November 5, 2018.[18]

 On February 6, 2018, Petitioner filed a *pro se* application for post-conviction relief ("PCR") in the 23rd JDC.[19] The trial court denied Petitioner's application on June 6, 2018.[20] Petitioner then filed an application for writs of supervisory review with the First Circuit, which application was denied on October 15, 2018.[21] Petitioner sought writs with the Louisiana Supreme Court.[22] On August 12, 2019, the Supreme Court denied Petitioner's application as untimely.[23] Shortly thereafter, on November 19, 2019, the Supreme Court simultaneously granted reconsideration of Petitioner's application and denied same.[24] This Petition followed. On

---

[13] R. Doc. 8, pp. 12-21.
[14] R. Doc. 4, p. 167.
[15] R. Doc. 8, pp. 80-87.
[16] R. Doc. 4, p. 176.
[17] R. Doc. 5, p. 63.
[18] *Id.*, p. 67.
[19] R. Doc. 4-1, pp. 5-9; 15-36.
[20] R. Doc. 4-2, pp. 65-68.
[21] R. Doc. 5, pp. 69-101, 103.
[22] *Id.*, pp. 106-38.
[23] *Id.*, p. 139.
[24] *Id.*, pp. 140-42.

October 20, 2022, this Court ordered that counsel be appointed to represent Petitioner in this matter.[25] Following appointment of counsel, this Court allowed both parties to file supplemental memoranda in support of their respective positions.[26]

## II.    Substantive Review[27]

### A.    Standard of Review

Under 28 U.S.C. § 2254(d), an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[28] Relief is authorized if a state court arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or this Court's mere disagreement with the state court

---

[25] R. Docs. 12, 14.

[26] R. Doc. 17.

[27] In their pleadings and related briefing, Respondents do not challenge the timeliness of Petitioner's Petition or argue that the claims presented have not previously been exhausted in state court. A review by this Court indicates Petitioner's Petition is timely and all claims have been exhausted, as they were all raised in Petitioner's PCR application. R. Doc. 4-1, pp. 5-9, 15-36. As such, the Court is turning straight to the merits.

[28] Each claim discussed in this Report was decided by a state court on the merits. Because there is a decision on the merits by a state court, AEDPA deference generally applies. *See Bedoya v. Tanner*, No. 12-1816, 2019 WL 1245655 at *10 (E.D. La. Feb. 20, 2019) ("The AEDPA's deferential standards of review apply only to claims adjudicated on the merits by the state courts.").

determination is not enough; the standard is one of objective reasonableness. *Id.*; *see also*

*Williams*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application'

inquiry should ask whether the state court's application of clearly established federal law was

objectively unreasonable."). State court determinations of underlying factual issues are presumed

to be correct, and the petitioner has the burden to rebut that presumption with clear and

convincing evidence. 28 U.S.C. § 2254(e)(1).

### B.    Factual Background

The facts, as accurately summarized in the decision by the Louisiana First Circuit Court

of Appeals, affirming Petitioner's conviction and sentence, are as follows[29]:

> During the early morning hours of December 16, 1990, the defendant abducted
> Jeannie Lavigne, the victim, from her home in St. Amant, and brought her to an
> area in Ascension Parish known as Summerfield, where he raped her. Her nude
> body was found approximately four miles from her home. The victim had been
> brutally beaten and stabbed, and her throat had been cut. The defendant was the
> victim's nephew and lived among the family for over twenty years, remaining
> silent, before he admitted that he killed the victim and entered a guilty plea to
> both counts.

The following information gleaned from the state court record further explains the length

of time between commission of the crime in 1990 and Petitioner's arrest in 2013. At the time of

the incident, DNA evidence was collected from the victim.[30] The initial investigation conducted

did not lead to an arrest or discovery of the identity of the victim's assailant. However, in

October 2012, the case was re-opened as a cold case homicide investigation.[31] Petitioner at that

time was asked to provide a DNA sample, but declined.[32] A DNA sample was later taken from

the victim's son, who was the first cousin of the Petitioner. Testing revealed that the Y-STR male

---

[29] R. Doc. 8, pp. 13-14.
[30] R. Doc. 4-2, p. 33.
[31] *Id.*, p. 34.
[32] *Id.*

lineage profile of the Petitioner's cousin matched the Y-STR profile of the DNA taken from the victim.[33] On March 22, 2013, a warrant was obtained for a DNA sample from Petitioner.[34] Three days later, on March 25, 2013, test results revealed that Petitioner's DNA matched the DNA taken from the vaginal swab and the panties of the victim, and an arrest warrant for one count of first degree murder and one count of aggravated rape was issued for Petitioner.[35] Petitioner later was indicted for second degree murder on October 11, 2013, before the charges were again reduced as part of Petitioner's plea agreement.[36]

##### C.    Ineffective Assistance of Trial and Appellate Counsel

As previously stated, Petitioner brings five claims, three arguing ineffective assistance of trial counsel and two arguing ineffective assistance of appellate counsel. Under *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner who claims that his counsel was ineffective must show the following: (1) that his counsel's performance was "deficient," *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland*, 466 U.S. at 687. The petitioner must make both showings to obtain habeas relief based upon alleged ineffective assistance of counsel. *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell

---

[33] *Id.*
[34] *Id.*
[35] *Id.*; R. Doc. 4-1, p. 123.
[36] R. Doc. 8, p. 36.

within the wide range of reasonable professional competence or that, under the circumstances, the challenged action might be considered sound trial strategy. *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Id.* at 816.

Even if the petitioner satisfies the first prong of the *Strickland* test, his petition must still demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). It is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id.* at 817. A habeas petitioner must "affirmatively prove," not just allege prejudice. *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009). Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply together, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### 1. Whether the State Court Failed to Properly Apply the *Strickland* Standard

As a preliminary issue, Petitioner argues that the state court, in its denial of Petitioner's PCR application, unreasonably applied *Strickland*. Per Petitioner, "[w]hile the state court cited to

*Strickland*, it focused its analysis on whether Lavigne's plea was knowingly, voluntarily, and intelligently made," which is "the wrong inquiry."[37] Petitioner claims that because the state court decision "was contrary to established Supreme Court precedent," Petitioner is eligible for habeas relief.[38]

Any inquiry into whether a plea is knowing and voluntary is not the correct means by which to address a claim of ineffective assistance of counsel. *Lafler v. Cooper*, 566 U.S. 156, 173 (2012). Thus, the Supreme Court in *Lafler* determined that "[b]y failing to apply *Strickland* to assess the ineffective-assistance-of-counsel claim respondent raised, the state court's adjudication was contrary to clearly established federal law." *Id.* However, "[w]hile a determination that a state court's analysis is contrary to or an unreasonable application of clearly established federal law is necessary to grant habeas relief, it is not alone sufficient. That is because, despite applying an improper analysis, the state court still may have reached the correct result, and a federal court can only grant the Great Writ if it is 'firmly convinced that a federal constitutional right has been violated.'" *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3rd Cir. 2017), quoting *Williams*, 529 U.S. at 389; *see also Horn v. Banks*, 536 U.S. 266, 272 (2002) ("While it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review … none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard…"). As such, when a federal court "concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred." *Lafler*, 566 U.S. at 849.

---

[37] R. Doc. 18, p, 26.
[38] *Id.*, p. 27.

8

Here, there are two separate allegations of ineffective assistance of counsel, one against trial counsel and one against appellate counsel. In its denial of Petitioner's PCR application, the state court first addressed whether Petitioner made an unqualified plea of guilty that then waived all non-jurisdictional defects to the plea, finding that "Mr. Lavigne knowingly, intelligently, freely, and voluntarily negotiated a plea agreement in order to avoid a life sentence."[39] This finding precedes the state court's assessment of ineffective assistance of trial counsel, which began with a citation to and discussion of the proper *Strickland* standard.[40] After setting forth the *Strickland* standard, the trial court stated[41]:

> In this case, Kenneth Lavigne faced a mandatory life imprisonment sentence without benefit of parole, probation, or suspension of sentence if he had been found guilty of Second Degree Murder. Counsel benefitted Mr. Lavigne in this negotiation by eliminating the mandatory life sentence. Mr. Lavigne well knew the range of penalties the Court could impose and that it was in the Court's discretion whether to run his sentences concurrently or consecutively.

This determination that counsel's actions "benefitted" Petitioner, after setting forth the proper *Strickland* standard, arguably indicates that the trial court applied the proper standard and found counsel's performance was not deficient. However, given the terse wording and lack of additional analysis, this is not clear.

The trial court's assessment of whether Petitioner's appellate counsel provided ineffective assistance is similarly unclear. For Claims Four and Five, the trial court appears to follow the same structure it used in assessing Claims One and Two. It again found that the negotiated plea waived all non-jurisdictional challenges and states, "[a] review of the record clearly demonstrates that Mr. Lavigne's plea was knowingly, voluntarily, and intelligently

---

[39] R. Doc. 4-2, p. 66.
[40] *Id.*, pp. 66-67.
[41] *Id.*, p. 67.

9

made."[42] It then cites briefly to the appropriate *Strickland* standard that to establish prejudice, a petitioner must "establish that the appellate court would have granted relief had the issue been raised."[43] However, it is not clear whether this standard was applied, as the trial court stated[44]:

> A review of the appellate decision in this case clearly shows that petitioner's plea was knowingly, intelligently, and voluntarily made. Thus, it is not obvious that the appellate court would have granted relief had these issues been raised on appeal.

While it appears the trial court applied the correct standard in assessing the effectiveness of trial counsel's assistance, it does not appear that the proper standard was applied in assessing same for Petitioner's appellate counsel. Thus, for at least Claims Four and Five, the trial court did not properly apply *Strickland* to Petitioner's claims, meaning that AEDPA deference is not owed and the Court will review those claims *de novo*. *See Vickers*, 858 F.3d at 850 (finding that a state court decision contrary to *Strickland* and *Lafler* "merely forfeits the AEDPA deference to which the state court's denial of relief would otherwise be entitled and dictates that we review [petitioner's] claims de novo"). Further, out of an abundance of caution, because it is not clear that the trial court properly applied *Strickland* to Petitioner's ineffective assistance of trial counsel claims, the Court will review those claims *de novo* as well.

### 2.    Claims One and Two: Ineffective Assistance of Trial Counsel Regarding Guilty Plea to Charge that Purportedly Was Time-Barred

In his first two claims, Petitioner argues ineffective assistance of trial counsel in failing to inform Petitioner that the second degree kidnapping charge to which he would plead guilty was time-barred by the statute of limitations (Claim One) and in failing to withdraw Petitioner's

---

[42] *Id.*
[43] *Id.*, pp. 67-68.
[44] *Id.*, p. 68.

guilty plea on statute of limitation grounds (Claim Two).[45] In his Supplemental Memorandum, Petitioner makes two main arguments in support of his claims. First, he argues that his counsel was deficient because they never advised him that the charge had prescribed and that he may be waiving a statute of limitations defense.[46] Second, shifting focus from the time-barred nature of the second degree kidnapping charge, Petitioner argues his counsel failed to advise him of the terms of the plea agreement, rendering his guilty plea not knowing and voluntary.[47] As explained below, both of these arguments are without merit.

a.    **Whether Counsel Was Deficient in Failing to Advise Petitioner That Charge Was Time-Barred**

The Court first turns to the question of whether counsel was deficient in failing to inform Petitioner that the second degree kidnapping charge was time-barred at the time of his guilty plea.[48] As explained below, the answer is no.

In their Supplemental Response, Respondents argue, *inter alia*, that Louisiana Code of Criminal Procedure art. 576 allows a person to plead guilty to a lesser offense that may otherwise have been time-barred, provided other specified criteria are met.[49] La. C.Cr.P. art. 576 provides, in its entirety:

> When a criminal prosecution is timely instituted in a court of proper jurisdiction and the prosecution is dismissed by the district attorney with the defendant's consent, or before the first witness is sworn at the trial on the merits, or the indictment is dismissed by a court for any error, defect, irregularity, or deficiency, a new prosecution for the same offense or for a lesser offense based on the same facts may be instituted within the time established by this Chapter or within six months from the date of dismissal, whichever is longer.

---

[45] R. Doc. 1, pp. 3-4. Because of the similarity of the claims, the Court addresses them together here, as both are based on the second degree kidnapping charge allegedly having prescribed prior to Petitioner pleading guilty to same.

[46] R. Doc. 18, pp. 21-23.

[47] *Id.*

[48] As this argument was raised in the Respondents' supplemental briefing, specifically allowed by this Court, the state court did not address it in its prior rulings.

[49] R. Doc. 19, p. 2.

A new prosecution shall not be instituted under this article following a dismissal of the prosecution by the district attorney unless the state shows that the dismissal was not for the purpose of avoiding the time limitation for commencement of trial established by Article 578.

The language of Art. 576 indicates just such a situation as the one in the instant matter. It specifically allows for a new prosecution for a lesser offense to "be instituted within the time established by this Chapter *or within six months from the date of dismissal, whichever is longer*." La. C.Cr.P. art. 576 (emphasis added). Here, at the time Petitioner pled guilty, while the time for initially bringing a charge of second degree kidnapping had expired,[50] the six months from dismissal of the greater offense had not. As explained by Respondents in their Supplemental Memorandum, "[p]ursuant to plea negotiations, on January 8, 2022, respondent concurrently dismissed the original Bill of Indictment and instituted prosecution, charging petitioner on a Bill of Information with Manslaughter ... and Second Degree Kidnapping …"[51] As the dismissal of the charge for the harsher offense and institution of the charge for the lesser offense occurred on the same day, said institution of the lesser offense charge was timely under Art. 576.

This interpretation has been confirmed by the Louisiana Supreme Court in *State v. Gray*, 2016-0687 (La. 3/15/17), 218 So.3d 40. The facts of the *Gray* case are as follows. Derroceus Abney was murdered on February 10, 2007. *Id.* at 42. His body was found hidden in an inoperable freezer in a residential yard. *Id.* A fingerprint not belonging to the victim was found in

---

[50] La. C.Cr.P art. 572(A) provides that "[e]xcept as provided in Articles 571 and 571.1, no person shall be prosecuted, tried, or punished for an offense not punishable by death or life imprisonment, unless the prosecution is instituted within the following periods of time after the offense has been committed: (1) Six years, for a felony necessarily punishable by imprisonment at hard labor. (2) Four years, for a felony not necessarily punishable by imprisonment at hard labor. (3) Two years, for a misdemeanor punishable by a fine, or imprisonment, or both. (4) Six months, for a misdemeanor punishable only by a fine or forfeiture." Thus, the time period for prosecuting second degree kidnapping, a felony punishable by imprisonment at hard labor, is six years. *See* La. R.S. § 14:44.1(C).
[51] R. Doc. 19, p. 3; *see also* R. Doc. 8, pp. 37, 42-43.

blood on the exterior of the freezer. *Id.* Investigators concluded that because the victim's blood on the exterior of the freezer would have dried in five to fifteen minutes, the person who left the fingerprint likely was involved in the victim's death and concealment. *Id.* Approximately six years later, the defendant's fingerprints were entered into a national database, and a match came back to the bloody fingerprint on the freezer. *Id.* The defendant was arrested on June 4, 2013, more than six years after the victim was murdered. *Id.*

The defendant was indicted for first degree murder on July 15, 2013. *Id.* The indictment was later amended on November 5, 2013, reducing the charge to second degree murder. *Id.* After discovering that certain witnesses and evidence, including the freezer, could not be produced, the State, on June 2, 2015, concurrently dismissed the murder prosecution and filed a bill of information charging the defendant with obstruction of justice. *Id.* The defendant subsequently filed a motion to quash the new bill of information, arguing that the State failed to institute prosecution for an obstruction of justice charge within six years, as required by Art. 572(A). *Id.* A hearing was held on July 13, 2015, after which the trial court found that the murder charge and obstruction of justice charge were based on the same facts, as required by Art. 576, and denied the motion to quash. *Id.* at 43. The appellate court later overruled this denial. *Id.*

The Supreme Court, in *Gray*, recognized that the State was relying on Art. 576 to provide for the timeliness of the new prosecution for obstruction of justice. *Id.* at 44. The Supreme Court first turned to the question of whether the two charges were based on the same facts. According to the reasoning of the appellate court, which found the facts were not the same, the offense of second degree murder had been completed when the facts giving rise to the obstruction charge occurred. *Id.* Per the appellate court, "the facts supporting the obstruction charge—***the alleged removal of the freezer to hide or tamper with the fingerprint***—necessarily occurred after the

murder was committed and would require additional physical and testimonial evidence to prove." *Id.* (emphasis in original). The Supreme Court disagreed, finding:

> In the instant case, the salient facts are that Derroceus Abney was murdered, his body was concealed in an unused freezer, and an impression of the defendant's fingerprint was left in the victim's blood on the freezer door. All of these facts would have been relevant to either the prosecution for murder or the prosecution for obstruction of justice. With respect to the murder, evidence of concealment and attempt to avoid apprehension is relevant since it indicates consciousness of guilt, and therefore is one of the circumstances from which a jury may infer guilt.

*Id.* at 47. The Supreme Court continues that "[b]ecause all of the facts of the obstruction charge were subsumed within the facts of the murder charge, including the occurrence of the murder … we conclude that the obstruction of justice charge was based on the same facts as the murder charge." *Id.* at 49-50.

After finding that the two charges were based on the same facts, the Supreme Court then turned to the defendant's argument that "because the time limit for institution of prosecution for the crime of obstruction of justice had accrued … *before* the prior prosecution for murder had been instituted …, La. C.Cr.P. art. 576 could not act to extend the time limit for institution of prosecution on the obstruction of justice charge." *Id.* at 50-51. After explaining that this argument "misconstrues the codal framework" of Title XVII of the Louisiana Code of Criminal Procedure, the Supreme Court reasoned:

> In implementing these principles, the legislature obviously enacted La. C.Cr.P. art. 576 with the recognition that the State has the power, as set forth in La. C.Cr.P. arts. 691 and 693, generally, to dismiss and reinstitute prosecutions, in its discretion, because of circumstances such as that encountered herein and in **State v. Murray** (i.e., the loss or unavailability of crucial evidence), for the purpose of charging a lesser offense or lesser grade of an offense; the limit, inter alia, placed on that power by Article 576, as to a subsequent prosecution for a lesser offense, is that the crime charged be "based on the same facts." The "same facts" restriction serves to give the defendant notice, via the dismissed prosecution, that he continues to be subject to prosecution arising out of the facts forming the basis of the first prosecution.

14

*Id.* at 51. The Supreme Court then found that the institution of the new prosecution for obstruction of justice under Art. 576 was allowed, reinstating the trial court's decision denying the defendant's motion to quash.

The *Gray* case tracks closely with the instant matter and indicates that, in and of itself, the institution of prosecution for a lesser offense, which ordinarily would be time-barred, is not prohibited and may be allowed under Art. 576 if all requirements of that statute are met. As stated above, the requirements for Art. 576 to apply are (1) that the first indictment was timely filed, (2) that the second indictment was based on the same facts, and (3) that the dismissal of the prior indictment was not for the purpose of avoiding time limitations for commencement of trial set forth in Art. 578.

Beginning with the timeliness of the first indictment against Petitioner, La. C.Cr.P. art. 571 specifies that "[t]here is no time limitation upon the institution of prosecution for any crime for which the punishment may be death or life imprisonment or for the crime of forcible or second degree rape." While Lavigne was arrested for first degree murder, he was indicted for second degree murder. La. R.S. 14:30.1(B) mandates that "[w]hoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." As second degree murder is punishable by life imprisonment, it is not subject to a time limitation for prosecution, meaning the initial indictment against Petitioner was timely.

The Court next turns to the question of whether the two crimes—second degree murder and second degree kidnapping—are based on the same facts. In examining this issue in the *Gray* case, the Supreme Court noted that "Article 576 states only that the new prosecution be 'based on the same facts' as the dismissed prosecution; Article 576 does not require that the new

15

prosecution must be based on the same *essential* facts as the dismissed prosecution." *Gray*, 218 So.3d at 48 (emphasis in original). The Supreme Court continues that "[t]he absence of language qualifying or restricting the term 'facts' clearly indicates that 'facts' is used in its broadest sense." *Id.* This phrase, therefore, is interpreted broadly. The Supreme Court further expounds on this issue, citing Revision Comment (a) to Article 576 that, in a previous case, it "held that both charges were 'based on the same facts' and that the second charge was not prescribed." The Court continues that the previous case, *State v. Murray*, 222 La. 950, 64 So.2d 230 (1953), "suggests, although the point is not discussed, that ***if the second charge is based on some of the facts of the first charge, it <u>need not</u> be based on all of them***." *Id.* at 50 (emphasis in original). The Supreme Court then reiterates this position, finding that "the redactors of Article 576 expressed the view that a second charge *need not* be based on all of the facts of the first charge, as long as it is based on some of the facts of the first charge." *Id.* (emphasis in original).

As stated above, the facts of this case are fairly sparse, as Lavigne entered a guilty plea. Second degree murder, per La. R.S. § 14:30.1(A)(2) as it existed in 1990 when the offense was committed, "is the killing of a human being: … (2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, … aggravated kidnapping, … even though he has no intent to kill or to inflict great bodily harm." Given this definition, the facts of aggravated kidnapping and rape are subsumed within the facts of the charge for second degree murder. La. R.S. § 14:44.1, which defines the crime of second degree kidnapping, supports this position. According to Section 14:44.1(A)(3), as it existed in 1990, "[s]econd degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is: (3) Physically injured or sexually abused." Section B of 14:44.1 defines kidnapping to include "[t]he forcible seizing and carrying of any person from one place to another," "[t]he

16

enticing or persuading of any person to go from one place to another," or "[t]he imprisoning or forcible secreting of any person."

The facts of this case can be contrasted with the situation in *State v. Powers*, 344 So.2d 1049 (La. 1977), cited by the *Gray* court, in which the court found that the subsequent lesser charge was not based on the same facts under Art. 576. In *Powers*, the defendant initially was charged with murder, armed robbery, and conspiracy to commit armed robbery. *Id.* at 1050. The defendant subsequently was charged with aggravated burglary and conspiracy to commit aggravated burglary. *Id.* In finding the charges not based on the same facts, the court reasoned that the aggravated burglary of an empty residence had taken place, with every element of the crime complete, before the resident returned home. *Id.* at 1052. Only once the resident returned home could all elements of the crime of aggravated robbery take place. *Id.* The court found that the charges were for "two separate crimes which occurred at different times and which contained separate elements" and, therefore, were not based on the same facts. *Id.*

In this case, Lavigne took his victim to a wooded area where he physically injured and sexually abused her, which injuries resulted in her death. Because the crime of second degree kidnapping requires that the person be taken and physically injured or sexually abused, the Court finds that the charges at issue here are based on the same facts. Additionally, the crime of second degree murder requires the killing occur when the offender is engaged in another act, including kidnapping and rape; thus, one charge subsumes the other. The Court's finding that the charges here are based on the same facts is further bolstered by the Louisiana Supreme Court's requirement of broad interpretation of the phrase "based on the same facts."

The final requirement of Art. 576 is that the dismissal of the prior indictment was not done for the purpose of avoiding time limitations for commencement of trial set forth in La. C.Cr.P. art. 578. La. C.Cr.P. art. 578 provides:

> A. Except as otherwise provided in this Chapter, no trial shall be commenced nor any bail obligation be enforceable:
>
> > (1) In capital cases after three years from the date of institution of the prosecution;
> >
> > (2) In other felony cases after two years from the date of institution of the prosecution; and
> >
> > (3) In misdemeanor cases after one year from the date of institution of the prosecution.
>
> B. The offense charged shall determine the applicable limitation.

Here, as stated above, Lavigne was arrested for first degree murder on March 26, 2013 and was later indicted for second degree murder on October 11, 2013. He was then charged with manslaughter and second degree kidnapping on January 8, 2016. The time limitation for commencement of trial begins anew with the re-institution of prosecution. *See State v. Roberts*, 278 So.2d 56, 57-58 (La. 1973); *State v. Van Dyke*, 2003-437 (La. App. 3 Cir. 10/1/03), 856 So.2d 187, 192-93, *writ denied*, 2003-2777 (La. 2/13/04), 867 So.2d 689. As such, there is no indication in the record—and no party argues—that his reduction in offense was to avoid the strictures of Art. 578. Given that all of the requirements of Art. 576 are met, the charge of second degree kidnapping against Petitioner was not time-barred under Art. 576. Thus, counsel's performance, in negotiating the plea deal for Petitioner and not telling Petitioner the charge was time-barred (because it was not), was not deficient, and the requirements of *Strickland* have not been met.

The Court notes that in his habeas petition, Lavigne focuses on the fact that at the time he committed his crime in 1990, second degree kidnapping was not a lesser included offense of

second degree murder, as it is now.[52] He cites, in support, to La. C.Cr.P. art. 558, which allows a defendant to "plead guilty of a lesser offense that is included in the offense charged in the indictment."[53] However, Art. 576 does not require that a lesser offense imposed be a lesser included offense. Rather, it allows for subsequent prosecution "for the same offense or for a lesser offense based on the same facts." La. C.Cr.P. art. 576. Further, the cases Petitioner cites in support of his position do not include a timely-filed initial indictment, which is present in this case. That argument, therefore, is without merit.

### b.    Whether Counsel Was Deficient in Failing to Adequately Advise of the Terms of the Plea Agreement

While Petitioner's second claim ostensibly is based on trial counsel's failure to withdraw Petitioner's guilty plea on statute of limitation grounds, in his Supplemental Memorandum, Petitioner also argues that counsel was deficient in not adequately advising him about the terms of his plea agreement. Having addressed the statute of limitations issue in the preceding section, the Court here focuses primarily on Petitioner's second argument regarding the knowing and voluntary nature of his plea.

According to Petitioner, counsel advised him that he would receive a sentence of 21 years for each charge, to run concurrently, "but induced [Petitioner] to sign a document that left open the possibility of a longer sentence."[54] Petitioner continues that when he "expressed concerns with the written terms of the agreement, his counsel advised him that [the trial judge] had agreed to sentence him to a total of 21 years," on which advice Petitioner accepted the terms of the plea agreement.[55] As further argued by Petitioner[56]:

---

[52] R. Doc. 1, pp. 12-15.
[53] *Id.*, p. 12.
[54] R. Doc. 18, p. 22.
[55] *Id.*
[56] *Id.*, pp. 24-25.

Put frankly, no defendant would accept a plea deal for a life sentence if a life sentence was the worst he could face if convicted at trial—especially when the trial was a cold case murder prosecution with no confession or eyewitnesses. In this case, Lavigne was 50 years old at the time of the plea. He was facing a charge that carried a life sentence (second degree murder). His attorney steered him to accept a plea that resulted in a sentence of 61 years, an effective life sentence for a 50 year old. Lavigne received no benefit in the plea deal. Instead, … he was induced to plea by his counsel's promise that the judge agreed to sentence him to 21 years. Yet counsel failed to secure that promise in writing in the "Boykin Form" or orally in court during the plea proceedings.

Thus, Petitioner claims that his plea "was not knowing and voluntary because he received ineffective assistance of counsel when his lawyer failed to advise him that the charge to which he was pleading was prescribed and erroneously advised him that he would only receive a total 21 year sentence under the plea."[57]

In ruling on Petitioner's PCR application, the trial court dismissed this claim by Petitioner.[58] In the words of the trial court[59]:

It was made abundantly clear to Mr. Lavigne before the plea was accepted that he would receive no less than 21 years on the Second Degree Kidnapping charge, and it would be within the Court's discretion as to whether that sentence would run concurrent or consecutive to the sentence he received for manslaughter. Both the State and Mr. Lavigne are bound by the terms of that agreement.

The trial court continued[60]:

In this case, Kenneth Lavigne faced a mandatory life imprisonment sentence without benefit of parole, probation, or suspension of sentence if he had been found guilty of Second Degree Murder. Counsel benefitted Mr. Lavigne in this negotiation by eliminating the mandatory life sentence. Mr. Lavigne well knew the range of penalties the Court could impose and that it was in the Court's discretion whether to run his sentences concurrently or consecutively. He cannot now cry foul when he is displeased with his sentence.

---

[57] *Id.*, p. 23.
[58] R. Doc. 4-2, p. 67.
[59] *Id.*, p. 66.
[60] *Id.*, p. 67.

The trial court thus dismissed Petitioner's claims for failure to allege claims upon which relief may be granted.[61]

"A defendant's trial counsel has the duty of ensuring that the defendant's plea is knowingly and voluntarily made." *Valerie v. Quarterman*, No. 06-1156, 2007 WL 4001703, at *6 (S.D. Tex. Nov. 15, 2007) (citations omitted). "If a petitioner claims that counsel has not discharged this duty, habeas relief is available *only* if the petitioner can establish that counsel's performance in connection with the plea was deficient or incompetent, and that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*, citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir. 1987).

Here, the Court agrees with the trial court, and the evidence in the record supports this finding. As previously explained, *Strickland* requires a showing of both deficiency and prejudice. Negotiating a plea deal that eliminated the mandatory life sentence is not conduct that falls below an objective standard of reasonableness. Nor is allowing one's client to plead to a lesser offense in a situation specifically envisioned and allowed for by the Louisiana Code of Criminal Procedure. The second degree kidnapping charge, per Art. 576, was not time-barred. Thus, Petitioner has failed to prove his trial counsel acted deficiently.

Turning to whether Petitioner's plea was knowingly and voluntarily made, Petitioner's repeated assertions that he did not know he could receive a sentence totaling more than 21 years is belied by the record evidence. In his initial guilty plea and sentencing for manslaughter, the trial judge specifically stated: "I understand the agreement today is that Mr. Lavigne will be sentenced on the Manslaughter charge as per the agreement with the district attorney's office,"

---

[61] *Id.*

and continues that "[w]ith regard to the Second Degree Kidnapping, a PSI will be ordered, and that will be deferred to the Court for sentencing at a later date?"[62] The prosecution responded "yes" to this question.[63] Subsequently, in speaking directly to Petitioner, the trial judge reviewed the specific language of the plea agreement, stating[64]:

> You shall be sentenced by the Court at a later date for the crime of Second Degree Kidnapping, and the Court will order a "Presentence Investigation Report." However, the sentence for Second Degree Kidnapping pursuant to the agreement with the State shall be not less than 21 years in custody of the Department of Corrections, at hard labor, without the benefit of parole, probation, or suspension of sentence, with credit for time served. **The Court** shall determine whether the sentences are to run concurrently or consecutively.
> Is that what you understood your attorneys had negotiated with the State of Louisiana?
> THE DEFENDANT: Yes, ma'am.

The Court plainly explained the terms of the plea agreement and the potential sentence Petitioner could receive for second degree kidnapping, to which Petitioner willingly acknowledged his consent. "Sworn testimony from a defendant at a plea hearing carries a 'strong presumption of verity.'" *Lovato v. U.S.*, No. 18-249, 2019 WL 11816570, at *4 (N.D. Tex. Jun. 4, 2019), citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Mendoza-Contreras v. U.S.*, No. 17-81, 2018 WL 7200652, at *2 (E.D. Tex. Apr. 16, 2018), *report and recommendation adopted*, 2019 WL 424203 (E.D. Tex. Feb. 2, 2019) ("Firm declarations in open court—including a plea colloquy—carry a strong presumption of verity."). Similarly, "[u]nambiguous written plea documents are 'entitled to a presumption of regularity and are accorded great evidentiary weight.'" *Id.*, quoting *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985).

Most importantly, the trial court made clear that it would determine whether Petitioner's sentences would run concurrently or consecutively; nowhere does the record reflect that

---

[62] R. Doc. 4-1, p. 58.
[63] *Id.*
[64] *Id.*, p. 65 (emphasis added).

concurrent sentences was part of the plea agreement. In fact, Petitioner's arguments take issue, really, with the fact that the court imposed a harsher sentence than he was expecting to receive. Assuming the truth of Petitioner's assertions that a 21-year consecutive sentence for second degree kidnapping had been agreed to, both the arguments and record evidence indicate that counsel simply relayed to Petitioner the information they were given. The trial judge, upon review of the PSI report, decided to impose a harsher sentence, though one within the range of possible sentences for the charge and of which Petitioner clearly was made aware by the court.[65] This was within the court's discretion, as specifically spelled out in the plea agreement. *See Libretti v. U.S.*, 516 U.S. 29, 43 (1995) (noting a plea agreement "correctly recognized that the District Court was not bound by the parties' agreement as to the appropriate sentence" and "is free to impose whatever sentence he feels is justified").

As a final note, the fact that sentencing was deferred until after preparation and review of a PSI report—a fact no one contests—indicates that the sentence was not final. Had a 21-year concurrent sentence been agreed upon, there appears no reason said sentence was not imposed at Petitioner's initial sentencing. The fact that a PSI report was ordered and sentencing deferred until after it was prepared and reviewed indicates Petitioner's sentence was dependent on the information therein. The Court thus concurs with the ruling of the state trial court and finds that Petitioner has failed to demonstrate ineffective assistance by his trial counsel. Claims One and Two of Petitioner's habeas Petition therefore are denied.

### 3. Claim Three: Ineffective Assistance of Trial Counsel for Failing to Challenge Pre-Sentence Investigation Report[66]

---

[65] At his sentencing on January 8, 2016, the court specifically informed Petitioner that "[t]he penalties for Second Degree Kidnapping in 1990 were imprisonment at hard labor for not less than five nor more than 40 years." R. Doc. 4-1, p. 65.

[66] The Court notes that Petitioner did not provide additional arguments or information on this claim in his supplemental briefing.

Petitioner's third claim is for ineffective assistance of trial counsel "for failing to object to the inadequacy of the Pre-Sentence Investigation."[67] As stated previously, after pleading guilty, Petitioner was immediately sentenced to 21 years in prison at hard labor for the manslaughter charge, with the court deferring sentencing Petitioner on the second degree kidnapping charge until after a PSI report could be prepared. As argued by Petitioner[68]:

> When Petitioner appeared for sentencing on the kidnapping charge on April 18, 2016, his attorneys advised him that the PSI report was not favorable to him and that the court could sentence him to as much as forty years at hard labor. However, Petitioner was led to believe[] during the January 8th plea agreement that he would receive no more than twenty-one years without benefit of parole. The attorneys and the court said nothing about Petitioner being sentenced to forty years under the plea agreement. Moreover, the PSI report appeared to be one-sided because the probation officer who prepared the report did not meet or talk with Petitioner.

La. C.Cr.P. art. 875, which governs pre-sentence investigations, requires that "[i]n making the investigation, the probation officer shall inquire into the circumstances attending the commission of the offense, the defendant's history of delinquency or criminality, his family situation and background, economic and employment status, education, and personal habits." La. C.Cr.P. art. 875(A)(1). Petitioner complains that "[a]t no time" did the probation officer who prepared the PSI report "meet or talk with Petitioner."[69] Noting that the PSI report states that Petitioner was unavailable for an interview for the investigation because he was "incarcerated outside the confines of the Donaldsonville District Office," Petitioner argues that he "was not given a fair opportunity to provide information that could have been used by the trial judge to lessen his sentencing exposure."[70]

---

[67] R. Doc. 1, p. 21.
[68] *Id.*, pp. 21-22.
[69] *Id.*, p. 22.
[70] *Id.*; R. Doc.8, p. 59.

In assessing Petitioner's claim, the state trial court, in its ruling denying Petitioner's PCR application, found that "[t]he PSI included all information that the probation officer is required to include pursuant to La. C.Cr.P. Art. 875."[71] The trial court continued[72]:

> This Court considered mitigating evidence offered on behalf of Kenneth Lavigne prior to sentencing. Petitioner cannot complain about the PSI just because he disagrees with it. He has failed to raise any issues regarding the substance of the PSI such as inaccuracies, or materially false or misleading information that was prejudicial to the defendant.

The PSI report prepared on Petitioner contains information concerning the commission of the offense here at issue, Petitioner's criminal history, and Petitioner's family history and background.[73] Petitioner does not challenge any of this information or argue that any of it is false or invalid. *See State v. Lockwood*, 439 So.2d 394, 396 (La. 1983) (recognizing that a sentence may be set aside when false or invalid data is contained in a PSI report that might have contributed to the severity of defendant's sentence).[74] Rather, he claims ineffective assistance of counsel because his attorneys failed to "challenge[] the omissions in the PSI report."[75] What information would have been provided had an interview of Petitioner occurred, however, is not alleged. Rather, Petitioner simply argues that had his attorneys "challenged the omissions in the PSI report, there is reasonable probability that the trial court would have ordered a new PSI

---

[71] R. Doc. 4-2, p. 67.

[72] *Id.*

[73] R. Doc. 8, pp. 58-64.

[74] Petitioner cites to the *Lockwood* case in his Petition in support of his position. However, in *Lockwood*, the court, in vacating the defendant's sentence and remanding the case for a new PSI and report, found:

> The probation officer who prepared defendant's PSI report failed to meet or talk with the defendant; he obtained most of the information for the report from the offices of the district attorney and the sheriff, or from cryptic notes left by a coworker. He did not interview the victims or the parents of the victims; he did not keep any records of those to whom he talked. He admits that much of his report is based on unverified hearsay or on his own preconceived opinions and beliefs.

439 So.2d at 397. These facts are distinguishable from the instant matter where, *inter alia*, there are no challenges to the validity of the information provided, no allegations of questionable record keeping, and no failure to interview the victims or relatives thereof.

[75] R. Doc. 1, p. 22.

report or granted Petitioner's motion to withdraw his guilty plea to the kidnapping charge."[76] This argument is wholly unsubstantiated, as there is no indication of the content of said "omissions." The Court, therefore, again concurs with the findings of the state court and denies this claim.

### 4. Claims Four and Five: Ineffective Assistance of Appellate Counsel Regarding Guilty Plea to Purportedly Time-Barred Charge

The Court now turns to Petitioner's final claims, which focus on the alleged ineffectiveness of Petitioner's appellate counsel. In Claim Four, Petitioner claims his appellate counsel was ineffective in failing to argue the issue of the second degree kidnapping charge being time-barred by the statute of limitations.[77] Similarly, in Claim Five, Petitioner argues his appellate counsel was ineffective for failing to argue that his guilty plea to second degree kidnapping was not voluntary, knowing, or intelligent.[78] Because of the similarity between these two claims, the Court will address them here together.

Claims for ineffective assistance of appellate counsel also are governed by the two-part *Strickland* standard. *Richardson v. Vannoy*, No. 19-634, 2022 WL 4181014, at *10 (M.D. La. Aug. 19, 2022), citing *Dorsey v. Stephens*,, 720 F.3d 309, 319 (5th Cir. 2013). In order to show prejudice in an ineffective assistance of appellate counsel claim, the petitioner must show that, but for counsel's unprofessional errors, the result of his direct appeal would have been different. *Id.* Petitioner fails to make that showing here.

Petitioner's arguments regarding alleged ineffective assistance by appellate counsel closely mirror those made by Petitioner alleging ineffective assistance of trial counsel. As demonstrated above, a guilty plea to a lesser offense, when the requirements of Art. 576 are met,

---

[76] *Id.*
[77] R. Doc. 1, p. 5.
[78] *Id.*, p. 6.

is appropriate and is not a guilty plea to an offense that is time-barred by Art. 572. That same reasoning applies here. As the Court has found that trial counsel was not ineffective, it also finds that appellate counsel was not deficient, and therefore not ineffective, for employing the same strategies.

Similarly, there is no indication in the record or otherwise that the result of Petitioner's direct appeal would have been different. All evidence indicates Petitioner's plea was knowing and voluntary and that he was repeatedly informed that his sentence for the charge of second degree kidnapping would be not less than 21 years and that the court would determine whether his two sentences would run concurrently or consecutively.[79] There is no record evidence cited by Petitioner in support of his assertions that he was promised a 21-year concurrent sentence. Petitioner has failed to prove both prongs of the *Strickland* standard. As such, the Court finds Petitioner's ineffective assistance of appellate counsel claims lack a factual basis and should be dismissed.

## III.    Certificate of Appealability

Should Petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

---

[79] *See, e.g.,* R. Doc. 4-2, p. 1; R. Doc. 4-1, p. 65.

In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of Petitioner's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event Petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## IV.    Conclusion and Recommendation

**IT IS RECOMMENDED** that Petitioner's application for habeas corpus relief be denied.

**IT IS FURTHER RECOMMENDED** that, in the event Petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on July 25, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**