UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KENNETH LAVIGNE                                              CIVIL ACTION

VERSUS

                                                            19-894-SDD-RLB

W.S. MCCAIN, ET AL.

RULING AND ORDER

*Pertinent Procedural History*

This is a habeas case filed pursuant to 28 U.S.C. § 2254. On appeal, the Fifth Circuit held that petitioner's trial counsel, Susan Jones (now Kutcher) was deficient for failing to advise him that the second-degree kidnapping charge, to which he plead guilty, was time-barred. *See Lavigne v. Hooper*, No. 23-30807, 2025 WL 1904564 (5th Cir. July 10, 2025). The Fifth Circuit found that "the six-year prescriptive period for second-degree kidnapping lapsed." *Id.* at *6. The Court concluded that "'Given that the time limitations for instituting prosecution . . . had prescribed, relator's trial counsel rendered ineffective assistance when he failed to file a motion to quash on that basis.' *State ex rel. Nalls v. State*, 2013-2806, p. 1 (La. 11/7/14), 152 So.3d 164. Per *Nalls*, Lavigne meets the first prong of the *Strickland* test since his trial counsel's performance was deficient." *Id*. The Fifth Circuit did not find that the petitioner was prejudiced in this regard because he did not present evidence that he attempted to withdraw his plea because the charge was time-barred. Rather, "he attempted to withdraw his plea because the sentences were consecutive." *Id.* at 7.

On rehearing, the Court of Appeals reversed this Court's finding that the petitioner was not entitled to an evidentiary hearing concerning his counsel's pre-plea assurances and remanded for a determination as to whether counsel had given constitutionally deficient advice during the plea

stage regarding the petitioner's sentence. *Id*. at 12. On remand, this Court held an evidentiary hearing, limited to the question of whether Lavigne's counsel, Susan Kutcher (formerly Jones) failed to properly represent the terms of the plea agreement during the plea stage.

*The Evidentiary Hearing*

Six witnesses testified and documentary evidence was taken at an evidentiary hearing held on November 12, 2025. The parties were ordered to file simultaneous briefs within 21 days of the lodging of the transcript. *See* R. Doc. 47. The transcript was lodged on January 21, 2026, and briefs were filed on February 11, 2026. *See* R. Docs. 51-53.

The question before the Court was whether petitioner's counsel provided constitutionally deficient advice during the plea stage, and if so, was the petitioner prejudiced. Only Susan Kutcher offered testimony as to what she told Lavigne during plea negotiations. Kutcher's co-counsel, Blaine Hebert, had no recollection of any conversations with Lavigne. As could be expected, the other witnesses – Judge Jesse LeBlanc, the prosecutor Robin O'Bannon, the Judge's law clerk, Erin Gros, and prosecutor Kenneth Dupaty – all testified they were not privy to any conversations between the petitioner and his counsel Susan Kutcher. *See* R. Doc. 51, p. 95, ln. 8-10; p. 138, ln. 13-19; p. 140, ln. 3-7; p. 169, ln. 16-19; and p. 181, ln. 19-22. As such, only Susan Kutcher was able to provide testimony as to the substance of her plea discussions with the petitioner.

The record evidence establishes that Susan Kutcher and her co-counsel Blain Hebert met with petitioner on March 31, 2015.[1] At that time, a grand jury indictment of second-degree murder, which carried a life sentence, was pending against Lavigne. Kutcher testified that Hebert advised the petitioner of an offer of 40 years if he pled to a lesser offense of manslaughter. The petitioner

---

[1] Blaine Hebert had no independent recollection of this meeting with petitioner, but attorney notes (Pet. Exhibit 12) confirm the occurrence of the meeting.

rejected the offer and stated that he would accept 21 years, with 11 years suspended for a total of ten years.

Kutcher testified, and her attorney notes confirm,[2] that she met with prosecutor, Robin O'Bannon, the trial judge, Jesse LeBlanc, and her law clerk, Erin Gros, on January 4, 2016. When Kutcher left that meeting, her understanding was that the petitioner would receive concurrent 21-year sentences on charges of manslaughter and second-degree kidnapping.[3] Later that evening, Kutcher received an e-mail with a proposed *Boykin* from Robin O'Bannon which read, "Attached is the Lavigne *Boykin*, as we discussed."[4] The *Boykin* form disclosed the required statutory sentences for manslaughter (life) and the agreed-to sentencing range for second-degree kidnapping (21-40 years),  even though the pending charge was still second-degree murder.

Two days later, on January 6, 2016, Kutcher met with the petitioner. At that time the pending charge was still second-degree murder. Yet, Kutcher discussed manslaughter and second-degree kidnapping charges with Lavigne and represented to him that his sentence would be for 21 years on each of those two charges and that they would run concurrently. On January 8, 2016, the District Attorney amended the charges and filed a bill of information, charging Lavigne with manslaughter and second-degree kidnapping.[5] That same day, Kutcher reviewed the *Boykin* form with petitioner. Kutcher testified that when going over the *Boykin* form with Lavigne, he expressed reticence because the *Boykin* form disclosed a sentencing range of 21-40 years on the kidnapping charge.[6] Kutcher testified that she again reassured him that his sentences would be for 21 years on

---

[2] Pet. Ex. 12.

[3] There was no dispute that the lesser charges of manslaughter and second-degree kidnapping were discussed in the pre-plea meeting among counsel and the Judge.

[4] Pet. Ex. 2.

[5] *Lavigne* at *1; R. Doc. 4, p. 44.

[6] The *Boykin* stated that the penalties for Second Degree Kidnapping in 1990 were imprisonment for not less than 5 nor more than 40 years, and that the sentence the petitioner would receive would be not less than 21 years. *See* Pet. Ex. 1.

each of the two charges and that they would run concurrently. On January 8, 2016, Lavigne pled guilty to manslaughter and second-degree kidnapping. Judge Leblanc imposed a 21-year sentence for the crime of manslaughter and ordered a Presentence Investigation Report prior to sentencing on the second-degree kidnapping charge.

A sentencing hearing was set on the kidnapping charge on April 18, 2016. Prior to the start of the hearing, Kutcher and Hebert had a meeting with Judge LeBlanc and prosecutor O'Bannon in chambers. Judge LeBlanc presented her written reasons for judgment and Kutcher was surprised to learn that Judge LeBlanc intended to sentence the petitioner to a consecutive sentence of 40 years on the kidnapping charge. Kutcher told Judge LeBlanc that the 40-year sentence was not what they had agreed to and was not what she had told the petitioner. She then left the meeting to talk to the petitioner.[7]

When Kutcher told the petitioner that the judge intended to sentence him to a consecutive 40-year sentence on the kidnapping charge, he expressed dismay, reminding Kutcher that she had told him it would be a concurrent 21-year sentence. Kutcher and Hebert approached the bench and told Judge LeBlanc that the plaintiff wanted to withdraw his plea because, at the time he took the plea, the possibility of a 40-year consecutive sentence on the kidnapping charge was not what Kutcher communicated to Lavigne. Following the bench conference, Kutcher made an oral motion on the record to withdraw Lavigne's plea on the kidnapping charge stating, "…whether he is right or wrong, he thought that it would be run concurrent and that he never would have entered a plea if he knew it was going to run consecutive." In denying the Motion, Judge LeBlanc said, "It could have been for 21 years, which I think is what the agreement was." She then said that the Court had

---

[7] Judge LeBlanc's account of this meeting differed. According to Judge LeBlanc, she told Kutcher what the sentence would be, and Kutcher told her that she needed to relay that information to the petitioner. *See* R. Doc. 51, p. 162, ln. 6-15.

made no promises about a certain sentence. At this point the petitioner interrupted the proceedings and said, "That's not what I was told." The Motion was denied, and the Court proceeded to immediately hold a sentencing hearing, for which Kutcher was unprepared. Kutcher never put on the record anything about Judge LeBlanc's assurance that the petitioner would receive a 21-year concurrent sentence. Despite this, at the instant habeas hearing she was emphatic that she had told the petitioner that his sentence would be for 21 years on the kidnapping charge to run concurrent with his 21-year sentence on the manslaughter charge.

### Law and Analysis

A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment, and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of a guilty plea, a petitioner must demonstrate that but for counsel's error, he would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### Deficiency

With regards to the deficiency prong, the Court in *Young v. Spinner,* 873 F.3d 282 (5th Cir. 2017) found that the trial attorney's performance was deficient when the attorney represented to the defendant that he would receive a 1-year sentence if he took a plea, but the petitioner took the plea and was sentenced to 20 years. The Court noted, "Few things are more fundamental to the defense of a criminal case than knowing the defendant's sentencing exposure. By providing his client with a wrong answer to that basic question, counsel's performance fell below the standard the Sixth Amendment requires." *Id*. at 285.

Similarly here, Petitioner faced a sentencing range of 21-40 years on the kidnapping charge. He had previously pled to and been sentenced on the manslaughter charge to 21 years,[8] the precise sentence Kutcher advised him that he would receive. Kucher told the Petitioner that in Chambers, Judge LeBlanc had promised a 21-year concurrent sentence on the kidnapping charge. Based on Kucher's representations and the D.A.'s dismissal of the indictment for second-degree murder, it was reasonable for the Petitioner to rely on the representations his attorney testified that she made. There is a factual dispute about what happened in Judge LeBlanc's chambers on January 6, 2016, but it was undisputed that Kutcher told the petitioner multiple times that he would receive 21-year concurrent sentences on the two new charges: on January 6, 2016, again on January 8, 2016 when he questioned the language of the *Boykin* which disclosed a possible sentence on the kidnapping of 21-40 years, and again immediately before he pled guilty to both charges on January 8th.  Based on the testimony of other witnesses called at the evidentiary hearing, there was no basis for Kutcher to have made this representation to Petitioner.[9]

Nevertheless, Kutcher's testimony was reliable, and the Court found it credible.[10] Kutcher had a clear recollection of her actions in petitioner's criminal case and testified multiple times,

---

[8] Which carried a mandatory 21-year statutory sentence. *See* La. R.S. 14:31 (1990).

[9] All other witnesses testified that there was no promise of a 21-year concurrent sentence for the kidnapping charge. Judge LeBlanc testified that she never promised anyone that the sentence would be a 21-year concurrent sentence. She was going to determine the sentence after she reviewed the PSI. *See* R. Doc. 51, p. 149 and 157. Prosecutor O'Bannon testified that at no time did the Court promise to give the petitioner a 21-year concurrent term. She further testified that there is no deal between a defendant and a judge separate from the *Boykin* form. The plea bargain is what is written on the *Boykin*. O'Bannon additionally testified that if there had been a definite sentence, there would have been no need for a PSI. *See* R. Doc. 51, p. 85, 87 and 88. Co-counsel Hebert likewise testified that there was no promise of a 21-year concurrent sentence. *See* R. Doc. 51, p. 127. Law clerk Gros also testified that there was no promise of a 21-year concurrent sentence, as did prosecutor Dupaty. *See* R. Doc. 51, p. 176 and 181.

[10] The timing of the process in the State Court warrants discussion. According to the undisputed evidence at the habeas hearing Kutcher, the prosecutor and the Judge met on January 6, 2016, to discuss the case. At that time the indictment for second-degree murder was pending. That same day the prosecutor sent Kutcher a *Boykin* form that addressed two lesser charges than the charge that was then pending. That same day Kutcher met with Lavigne and represented the terms of the deal to be 21 years concurrent on the counts of manslaughter and second-degree kidnapping. Two days later, on January 8, 2016, the District Attorney amended the charges and filed a new Bill of Information charging Lavigne with manslaughter and second-degree kidnapping. The timing implies that lesser charges and sentences were discussed in the January 6th meeting among the lawyers and the Court and once an agreement was reached, the D.A.

consistently, that she told the petitioner that he would receive a 21-year concurrent sentence on the kidnapping charge. Kutcher candidly admitted under oath that she did not follow "good practice."[11] By testifying truthfully about her mistakes, she risks significant harm to her professional reputation. Buttressed by the fact that her professional performance was found lacking by the Fifth Circuit,[12] the Court finds her testimony to be credible. As such, her failure to correctly advise the Petitioner of his sentencing exposure on the kidnapping charge, a possible consecutive 21 – 40 years, fell below the standard of performance required by the Sixth Amendment.

*Prejudice*

Where a petitioner alleges ineffective assistance in connection with a guilty plea, prejudice requires the petitioner to demonstrate a reasonable probability that, but for counsel's deficiency, he would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). ("'[P]rejudice ... focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."). Whether the result of the trial would have been different is not at issue. *See Lee v. United States*, 582 U.S. 357, 364 (2017).

However, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 369. Courts must "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*

In determining whether a petitioner under similar circumstances could show prejudice, the Supreme Court in *Lee,* 582 U.S. 357, 367-371 explains:

> "A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial. But that is not because the prejudice inquiry in this context looks to the probability of a conviction for its

---

reduced the charges in conformance therewith. This lends additional credence to Kutcher's testimony of what she understood the deal to be.

[11] *See* R. Doc. 51, p. 38 and 67.

[12] See *Lavigne* at *6

own sake. It is instead because defendants obviously weigh their prospects at trial in deciding whether to accept a plea. *See Hill,* 474 U.S., at 59, 106 S.Ct. 366. Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one.

But common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. *See INS v. St. Cyr,* 533 U.S. 289, 322–323, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. For example, a defendant with no realistic defense to a charge carrying a 20–year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years…

The Government urges that, in such circumstances, the possibility of an acquittal after trial is "irrelevant to the prejudice inquiry," pointing to our statement in *Strickland* that "[a] defendant has no entitlement to the luck of a lawless decisionmaker." 466 U.S., at 695, 104 S.Ct. 2052. That statement, however, was made in the context of discussing the presumption of reliability we apply to judicial proceedings. As we have explained, that presumption has no place where, as here, a defendant was deprived of a proceeding altogether. *Flores–Ortega,* 528 U.S., at 483, 120 S.Ct. 1029. In a presumptively reliable proceeding, "the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like" must by definition be ignored. *Strickland,* 466 U.S., at 695, 104 S.Ct. 2052. But where we are instead asking what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking.

[…]

We cannot agree that it would be irrational for a defendant in Lee's position to reject the plea offer in favor of trial. But for his attorney's incompetence, Lee would have known that accepting the plea agreement would *certainly* lead to deportation. Going to trial? *Almost* certainly. If deportation were the "determinative issue" for an individual in plea discussions, as it was for Lee; if that individual had strong connections to this country and no other, as did Lee; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that "almost" could make all the difference. Balanced against holding on to some chance of avoiding deportation was a year or two more of prison time. See *id.,* at 6. Not everyone in Lee's position would make the choice to reject the plea. But we cannot say it would be irrational to do so.

Lee's claim that he would not have accepted a plea had he known it would lead to deportation is backed by substantial and uncontroverted evidence. Accordingly we conclude Lee has demonstrated a "reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S., at 59, 106 S.Ct. 366."

Here, Kutcher's notes reflect that when the petitioner was first presented with a plea offer for 40 years, he rejected it: "He doesn't want that, would accept 21, suspend all but ten, will take 21 and non-aggravated." *See* R. Doc. 51, p. 23. Kutcher knew that the petitioner would never accept a plea that would result in a 61-year sentence because the petitioner was 47 years old and he might as well go to trial. *See* R. Doc. 51, p. 33. When Kutcher met with the petitioner to discuss the second plea offer, she assured him he would receive concurrent sentences for 21 years. She reiterated that deal when he expressed concern and questioned the 21–40-year sentencing range on the *Boykin* form. *See* R. Doc. 51, p. 37-40. Kutcher credibly testified that if she had told the petitioner he could have potentially been sentenced to 61 years, he would not have taken the plea. *See* R. Doc. 51, p. 41. This is corroborated by her contemporaneous notes documenting his earlier rejection of a 40-year offer.

Once the petitioner was informed of the Judge's intent to sentence him to a 40-year consecutive sentence on the kidnapping charge, the petitioner immediately demanded to withdraw his plea. Petitioner even interjected during the Judge's ruling on the motion to withdraw the plea. *See* R. Doc. 51, p. 53. As testified to by Kutcher, the petitioner's motivation for taking the plea was to avoid serving consecutive sentences and 40 years[13] in prison. *See* R. Doc. 51, p. 78-79. In his Supplemental Memorandum (R. Doc. 18), the petitioner maintains he would never have accepted the plea deal for this cold case[14] prosecution if he knew it could result in what amounts

---

[13] Petitioner was actually facing 61 years in prison.

[14] As previously detailed by this Court in *Lavigne v. McCain*, 2023 WL 7443075 (M.D. La. 7/26/23) the facts are as follows: During the early morning hours of December 16, 1990, the petitioner abducted Jeannie Lavigne, the victim, from her home in St. Amant, and brought her to an area in Ascension Parish known as Summerfield, where he raped her. Her nude body was found approximately four miles from her home. The victim had been brutally beaten and stabbed, and her throat had been cut. The petitioner was the victim's nephew and lived among the family for over twenty years, remaining silent, before he admitted that he killed the victim and entered a guilty plea to both counts. At the time of the incident, DNA evidence was collected from the victim. The initial investigation conducted did not lead to an arrest or discovery of the identity of the victim's assailant. However, in October 2012, the case was re-opened as a cold case homicide investigation. Petitioner at that time was asked to provide a DNA sample but declined. A DNA sample was later taken from the victim's son, who was the first cousin of the Petitioner. Testing revealed that

to a life sentence, when the initial charge also exposed him to a life sentence.[15]

It is reasonable that a 50-year-old[16] defendant would reject a plea offer of 61 years in favor of trial on a charge for a 23-year-old crime that carried a life sentence. This is not a case where the petitioner is asking the Court to upset a plea based solely on *post hoc* assertions about how he would have pleaded but for his attorney's deficiencies. There is contemporaneous evidence in the record that leads the Court to find a reasonable probability that the petitioner would have rejected the plea had he known his true sentencing exposure. As noted in *Lee,* when the consequences of a plea and a trial are "similarly dire, even the smallest chance of success at trial may look attractive" to a defendant. *Lee*, 582 U.S. 357, 367. That is the case here – an *almost certain* life sentence if the petitioner went to trial versus a *definite* "life sentence" due to the petitioner's age. The Court finds that had the petitioner been advised of his real sentencing exposure on the kidnapping charge, he would not have accepted the plea offer and would have instead gone to trial. As such, the petitioner has shown both that his trial counsel was deficient, and he was prejudiced by counsel's deficiency. Accordingly,

---

the Y-STR male lineage profile of the Petitioner's cousin matched the Y-STR profile of the DNA taken from the victim. On March 22, 2013, a warrant was obtained for a DNA sample from Petitioner. Three days later, on March 25, 2013, test results revealed that Petitioner's DNA matched the DNA taken from the vaginal swab and the panties of the victim, and an arrest warrant for one count of first-degree murder and one count of aggravated rape was issued for Petitioner. Petitioner later was indicted for second-degree murder on October 11, 2013, before the charges were again reduced as part of Petitioner's plea agreement.

[15] Originally, an arrest warrant for one count of first-degree murder and one count of aggravated rape was issued forApril 10, 2026 Petitioner. Petitioner later was indicted for second-degree murder on October 11, 2013. In 1990, the sentence for second degree murder was life imprisonment. *See* La. R.S. 14:30.1 (1990).

[16] The petitioner, born August 28, 1965, was 50 years old on January 8, 2016, when he accepted the plea offer. *See* R. Doc. 4, p. 51.

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **GRANTED**, and the petitioner's plea and sentence for the kidnapping charge is hereby **VACATED**. Judgment shall be entered accordingly.

Signed in Baton Rouge, Louisiana, on <u>April 10, 2026</u>.

_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**